UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                          )
UNITED STATES OF AMERICA          )          CR. NO. 05-CR-10174-RWZ
                                                          )
                                                          )
V.                                                        )
                                                          )
                                                          )
MOHAMED JABAK                            )
_____)

**<u>SENTENCING MEMORANDUM ON BEHALF OF MOHAMED JABAK</u>**

Through counsel, Mohamed Jabak ("Jabak") files the following Sentencing

Memorandum setting forth all factors that the Court should consider in determining what

type and length of sentence is sufficient, but not greater than necessary, to comply with

the statutory directives set forth in 18 U.S.C. § 3553(a).

**<u>Sentencing under *Booker*</u>**

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding

in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004) and <u>Apprendi v. New Jersey</u>, 530 U.S.

466 (2000) applies to the Federal Sentencing Guidelines. <u>United States v. Booker</u>, 125 S.

Ct. 738, 756 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court

found "no relevant distinction between the sentence imposed pursuant to the Washington

statutes in <u>Blakely</u> and the sentences imposed pursuant to the Federal Sentencing

Guidelines" in the cases before the Court. <u>Id</u>. at 751. Accordingly, reaffirming its holding

1

in <u>Apprendi</u>, the Court concluded that

> [a]ny fact (other than a prior conviction) which is necessary to support a
> sentence exceeding the maximum authorized by the facts established by a
> plea of guilty or a jury verdict must be admitted by the defendant or
> proved to a jury beyond a reasonable doubt. <u>Id</u>. at 756.

Based on this conclusion, the Court further found those provisions of the

federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18

U.S.C. § 3553(b)(1) or which rely upon the Guideline's mandatory nature, 18

U.S.C. § 3742(e), incompatible with its Sixth Amendment holding.  <u>Booker</u>, 125 S. Ct. at

756. Accordingly, the Court severed and excised those provisions, "mak[ing] the

Guidelines effectively advisory." <u>Id</u>. at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing

Reform Act, as revised by <u>Booker</u>, requires a sentencing court to consider

Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the

court to tailor the sentence in light of other statutory concerns as well, see §

3553(a). <u>Booker</u>, 125 S. Ct. at 757. Thus, under <u>Booker</u>, sentencing courts must

treat the guidelines as just one of a number of sentencing factors set forth in 18

U.S.C. § 3553(a).

The primary directive in Section 3553(a) is for sentencing courts to "impose

a sentence sufficient, but not greater than necessary, to comply with the purposes

set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to
       provide just punishment for the offense;
(B)    to afford adequate deterrence to criminal conduct;
(C)    to protect the public from further crimes of the defendant; and
(D)    to provide the defendant with needed educational or vocational training, medical
care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs

sentencing courts to consider the following factors:

1) "the nature and circumstances of the offense and the history and
characteristics of the defendant" (§ 3553(a)(1);
2) "the kinds of sentences available" (§ 3553(a)(3);
3) "the need to avoid unwarranted sentence disparities among defendants
with similar records who have been found guilty of similar conduct" (§
3553(a)(6); and
4) "the need to provide restitution to any victims of the offense."  (§
3553(a)(7).


Other statutory sections also give the district court direction in sentencing.

Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following

limitation: in determining whether and to what extent imprisonment is appropriate based

on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is

*not* an appropriate means of promoting correction and rehabilitation" (emphasis added).

Under 18 U.S.C. § 3661, "*no limitation* shall be placed on the information

concerning the background, character, and conduct of [the defendant] which a court of

the United States may receive and consider for the purpose of imposing an appropriate

sentence" (emphasis added).  This statutory language certainly overrides the (now-

advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. § 5H1. See also United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004); United States v. Naylor,  359 F. Supp. 2d 521 (W.D. Va. 2005) (concluding that sentence below career offender guideline range was reasonable in part because of defendant's youth when he committed his predicate offenses – he was 17 – and noting that in Roper v. Simmons, 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

The directives of Booker and § 3553(a) make clear that courts may no longer uncritically apply the guidelines. Such an approach would be "inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore." United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005). As another district court judge has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in Booker." United States v. Jaber, 362 F. Supp. 2d

365 (D. Mass. 2005). See also <u>United States v. Ameline</u>, 400 F.3d 646, 655-56 (9th Cir.

Feb. 9, 2005) (advisory guideline range is "only one of many factors that a sentencing

judge must consider in determining an appropriate individualized sentence"), reh'g en

banc granted, 401 F.3d 1007 (9th Cir. 2005).

Justice Scalia explains the point well in his dissent from Booker's remedial

holding:

> Thus, logic compels the conclusion that the sentencing
> judge, after considering the recited factors (including the
> guidelines), has full discretion, as full as what he possessed
> before the Act was passed, to sentence anywhere within the
> statutory range. If the majority thought otherwise – if it
> thought the Guidelines not only had to be 'considered' (as
> the amputated statute requires) but had generally to be
> followed – its opinion would surely say so. <u>Booker</u>, 125 S.
> Ct. at 791 (Scalia, J., dissenting in part).

Likewise, if the remedial majority thought the guidelines had to be given "heavy

weight," its opinion would have said so. The remedial majority clearly understood that

giving any special weight to the guideline range relative to the other Section 3553(a)

factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider <u>all</u> of the § 3553(a)

factors, not just the guidelines, in determining a sentence that is sufficient but not greater

than necessary to meet the goals of sentencing.  And where the guidelines conflict with

other sentencing factors set forth in § 3553(a), these statutory sentencing factors should

generally trump the guidelines.  See, <u>United States v. Denardi</u>, 892 F.2d 269, 276-77 (3d

Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since § 3553(a)

requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

## APPLICATION OF THE STATUTORY SENTENCING FACTORS TO THE FACTS OF THIS CASE

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

1.    **The Nature and Circumstances of the Offense and the History and Characteristics of the Offender:**

The nature and circumstances of the instant offense are intrinsically tied to the history and characteristics of Jabak. Therefore, for the purpose of this memorandum, the two will be discussed in conjunction with one another.

Jabak grew up the youngest of three children in worn torn Beirut, Lebanon. As the PSR states, he lived in constant fear, constantly wondering if he was going to survive the violence and live long enough to get married. He has vivid, enduring and lasting childhood memories of the death and destruction that surrounded and enveloped him on a daily basis.

Jabak immigrated to the United States in May of 1998. He possesses an Alien Registration Number and is legally residing in the United States as a Permanent Resident. Additionally, it should be noted that he had long ago applied for citizenship. However, it

seems that the instant action had resulted in an administrative hold being placed on his application.

Upon entering the United States he was married to Rhonda Bertram. He had previously met Ms. Bertram through his current sister – in – law, Liberty Jabak, while she was on vacation in Lebanon. Unfortunately, the marriage ended in divorced and Jabak ultimately moved to Massachusetts where he resided with his brother Ali Jabak and his wife, Liberty, in Woburn.

Like any other individual the world over Jabak had applied for and received a number of credit cards. Through his employment earnings Jabak was able to purchase numerous items on credit and subsequently pay the various monthly charges as they became due.

Upon his arrival in Massachusetts in 2002, a relative suggested to him that he consult a psychiatrist to address the mental and emotional trauma that had been affecting him for years. Jabak was hesitant for some time, but ultimately was referred to Dr. Goldfinch by his then primary care physician. See, Psychological report of Dr. Goldfinch attached hereto as Exhibit A.

It should be noted that the instant offense took place in the months of April and May of 2002. It was during this time that Jabak was untreated and suffering from depression. Dr. Goldfinch opines that Jabak found himself very unprepared for life in the United States. Additionally, he struggled with the need to prove himself to his family in Lebanon and make up for the deprivation of his childhood.

Jabak began to gamble in the hope that he would achieve that big win and make up for the many losses in his life. As Dr. Goldfinch states "his gambling was linked to his

belief that that important issues in life are ruled by chance, and that his time must come".
Jabak wanted, in the worst way, to show his family and friends that he was making a
success of himself in the United States. The only way he knew how to impress his family
and friends was with gifts and travel. Conversely, the only way he was able to obtain the
gifts and travel was through credit cards. Thus began the spiral of overwhelming credit
card debt and his eventual appearance before the Bankruptcy Court.

In or about January of 2003, Jabak met with a general practice attorney in
Lawrence, MA and engaged the attorney to represent him in a voluntary Chapter 7. When
it was brought to his attention that issues had arisen as to the accuracy of the schedules in
the Chapter 7, Jabak sought out the advice of a former trustee in the bankruptcy court
now in private practice. This led to Jabak filing a Chapter 13, in which he amended the
schedules to list numerous assets that had been omitted from the schedules in the Chapter
7. Under the current Chapter 13 plan, Jabak is required to repay his creditors
approximately $395.00 dollars per month. Jabak has been compliance with his payment
plan and is current on his payments to the Chapter 13 Trustee. See, attached Exhibit B.

**2.    The Kinds of Sentences Available:**

In Booker, the Supreme Court severed and excised 18 U.S.C. § 3553(b), the
portion of the federal sentencing statute that made it mandatory for courts to sentence
within a particular sentencing guidelines range. Booker, 125 S. Ct. at 756. Since the
guidelines are now advisory, the sentencing table and restrictions on probationary
sentences, sentences of home confinement and split sentences in U.S.S.G. 5A, 5B1 and

5C1 are also advisory. Likewise, supervised release is no longer mandatory unless required by statute. The only restrictions on sentencing are those imposed by statute. Thus, unless a mandatory minimum statute applies, probation is available for all but Class A and B felonies under 18 U.S.C. 3561 (a). To receive a sentence of probation, Jabak does not have to come within Zones A or B on the sentencing guidelines table and to receive a split sentence of imprisonment and home or community confinement Jabak does not have to come within Zone C.

Where, as here, Jabak arguably falls within Zone D, this Court has the authority to impose a sentence that ranges anywhere from probation to home confinement, community confinement, or any combination thereof. In U.S. v. Anderson, 365 F. Supp. 2d 67 (D. Me. 2005) the court determined that an 18 month sentence, which was within Zone D in the guidelines, was appropriate. But considering the defendants background, the court concluded that 18 months of imprisonment would be greater than necessary to meet the goals of sentencing, and for this reason, made use of the Zone C split sentence device to impose a sentence of 9 months in prison and nine months home confinement.

3.    **The Sentencing Range Established by the Sentencing Commission**:

Jabak takes the position that the correct guideline range begins with a Base Offense Level of 6, see, 2B1.1(a). As the loss is greater than $70,000 but less than 120,000, the Base Offense Level would be increased by 8. Additionally, as the instant offense involved 10 or more victims (credit card companies), per 2B1.1(b)(2)(A), the

offense level is increased by an additional 2 levels. Likewise, pursuant to 2B1(b)(7)(B), the offense level is increased by 2 levels as the offense involved a misrepresentation during the course of a bankruptcy proceeding.

However, a 3 level reduction should be applied pursuant to 3E1.1(a) and (b) for acceptance of responsibility. Therefore, the total offense level is 15. Accordingly, with a Criminal History Category of I, Jabak has a guideline sentence in Zone D of 18 – 24 months.

We believe that based upon the information contained in the PSR and the within memorandum, the guideline range does not adequately reflect Jabak's conduct, personal history, medical condition, mental state, ect. In U.S. v. Ranum, 353 F. Supp. 2d 984 (E.D. Wis. 2005) the Court noted that the remedial majority in Booker directs courts to consider all the 3553(a) factors, many of which the guidelines either reject or ignore. The Court reasoned that while courts must seriously consider the guidelines and give reasons for sentences outside the range, in so doing courts should not follow the old departure methodology. Id at. 986 – 87.

4.      **The Need To Avoid Unwarranted Disparities:**

The guidelines were intended to reduce unwarranted sentencing disparity across the country between similarly situated defendants. In the instant matter, Jabak is not charged with any co – defendants and any sentence is overwhelmingly driven by the perceived monetary loss attributable to his actions.

This Circuit has noted the need to avoid unwarranted sentencing disparities

between federal and state court sentences in similar cases. <u>U.S. v. Wilkerson</u>, 411 F. 3d 1 (1st Cir. 2005). Given this Courts extensive experience fashioning sentences in a wide variety of criminal cases, we believe that the more reasonable approach would be to equate the instant matter to a simple larceny profoundly influenced by a deep sense of depression and cultural history. What takes this case from the heartland is that Jabak has, long ago, taken responsibility for his actions and has begun the process of repaying his creditors. He has done this for a number of years. All the while knowing that his actions may prevent him from obtaining a discharge in the Bankruptcy Court and ultimately could lead to his deportation back to Lebanon.

**5.**     <u>**The need to provide restitution to any victims of the offense:**</u>

At bar, Jabak continues to repay his creditors through his Chapter 13 plan. We believe that a probationary sentence, or alternatively, a short prison sentence will allow Jabak to get back to work quickly and continue making his restitution payments via the Chapter 13. Reducing a sentence of imprisonment in matters such as this is well within the realm of sentencing options. In <u>U.S. v. Peterson</u>, 363 F. Supp. 2d 1062 (E.D. Wis. 2005) the defendant was faced with a guideline range was 12 – 18 months. However, the court noted that a sentence of imprisonment would have caused the defendant to lose his job and would have impaired his ability to pay restitution. For this reason, the court imposed a sentence of one day in prison followed by five years of supervised release, with a condition that the first half year be in a community correction center and the second half year be on home confinement, both with work release privileges. The court noted that the sentence confined the defendant for

12 months – the low end of the guideline range – while still permitting him to work and pay restitution. This is a clear example of the application of the 3553(a) factors so as to fashion a sentence no greater than necessary to meet the goals of sentencing.

## PROPOSED "STATEMENT OF REASONS PURSUANT TO 18 U.S.C. 3553 (c)" FOR SENTENCE BELOW GUIDELINE RANGE

- The monetary loss was more than $70,000 but less than $120,000.
- Jabak has accepted responsibility for his actions and continues to repay his creditors in a timely manner consistent with his responsibilities under his Chapter 13 plan.
- Requests for victim impact statements have been forwarded to all of the credit card companies, but no victim impact statements have been received.
- Jabak has no convictions and there are zero criminal history points.
- Jabak grew up in Beirut, Lebanon during its civil war. His life included checkpoints, suicide bomb attacks, and a constant fear of death.
- Jabak and his family struggled financially.
- Jabak suffered additional emotional trauma as more fully set forth in the PSR.
- Jabak's father underwent heart surgery. The surgery was paid for, in part, by Jabak's cousin. Jabak felt that he had to repay his cousin for assisting his father in his time of need. Jabak purchased numerous plane tickets for his cousin through the only means available to him at the time, his credit card.
- As a result of his childhood, Jabak suffers from depression and Post Traumatic Stress Disorder for which he receives individual psychotherapy and is prescribed Prozac.
- Jabak does not have insurance. However, the medical records indicate that his commitment to his sessions is very strong, particularly as he pays the expense out of pocket and travels nearly two hours to attend the sessions.
- Jabak's response to treatment is good and the prognosis is promising.
- In or about February of 2005, while not able to afford the uninsured cost of Prozac,

Jabak attempted to commit suicide.

- During the instant offense Jabak purchased many lottery tickets and traveled to Foxwoods Casino. While gambling, Jabak had the sensation that he was winning.

- The spending of significant sums of money on lottery tickets as well as purchasing gifts for family and friends has an ostentatious sensation associated to it that is deeply rooted in his childhood deprivation.

- 3553(a) requires that any sentence be no greater than necessary to meet the four purposes of sentencing.

- This Court has the authority to impose a sentence that ranges anywhere from probation to home confinement, community confinement, or any combination thereof.


## <u>CONCLUSION</u>

For the foregoing reasons, Mohamed Jabak respectfully submits that a sentence of 18 months home confinement, with strict work release privileges, is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).


## <u>RECOMMENDATION OF FORT DEVENS</u>

Jabak requests that should the Court sentence him to a term of incarceration, the Court recommend that said incarceration be served at Fort Devens so that his family can visit him as regularly as possible and he can continue with his medical treatment.


Respectfully submitted,
Mohamed Jabak,
By his attorney,


*/S/    Neil F. Faigel*
Neil F. Faigel
BBO No. 551688

13

265 Broadway
Methuen, MA 01844
(978) 681 – 9600

Dated: January 26, 2006

# EXHIBIT A

**James Lee Goldfinch, PhD**
**Clinical Psychologist**

60 Island Street---Lawrence, MA 01840
Phone 978-691-5561 Fax 978-688-6373

December 19, 2005

Psychological Report
Mohamed Jabak, DOB 07/17/1975

Report prepared with the permission of Mohamed Jabak, at the request of his attorney, Neil Faigel, for the Federal Court, in order to present a more complete picture of Mohamed Jabak for his upcoming sentencing on charges of mail and bankruptcy fraud.

Summary: Mohamed is a 30-year-old single Lebanese man, with no children, who immigrated to this country in 1998. He lives and works with family members here. Mohamed entered therapy to deal with anxiety and depression related to his traumatic history in Lebanon during that country's civil war in the, 1975-1991, and to financial and legal problems in the U.S. He has made very significant progress in therapy and is now more stable, more determined and committed to dealing with his legal and financial issues as best as he can in order to make a better life for himself his family here and in Lebanon.

History: Mohamed was born in Beirut, Lebanon, to his father's second wife. He has two siblings. The Lebanese Civil War and the invasion by Israel marked his childhood. His earliest memories are of the constant threat of bombardment by planes, the sounds of artillery and gunfire, and the virtual impoundment in his home caused by these dangers. He was able to attend and complete primary and middle school, but otherwise was confined to his home. He has specific and vivid memories of this time which include witnessing the bombing of a neighbor's house, and seeing the destruction and death caused by this. He also recalls a time when his family was forced to flee Beirut, during the invasion by Israel in 1982, and traveled through very dangerous areas, seeing the evidence of battles, to a village in the mountains where his family had connections.

During this period Mohamed was also victimized by a sexual predator, and was never able to deal with this until recently.
After two years living in the mountains, separated from his father, who had stayed in Beirut, Mohamed returned with his family to Beirut. Since early childhood, he describes feeling very close to his father's first wife, a respected and beloved presence in his family, a woman who had gone on a Hajj to Mecca, and thus honored by her family. It was for her, he says, that he worked to find a way in life, and it was with her that he felt most understood and loved. Mohamed, at 16, was with her when she was struck by a heart attack, and died before she was able to reach medical care. He has carried a tremendous amount of guilt and grief over this since that time.

Mohamed was inducted into the Lebanese Army and served without pay, as was the custom, for one year. Over the next few years, Mohamed began to work and planned his immigration. He was struggling with increasing depression during this period. When he arrived in the United States, he was determined to succeed and find a way to make his life better. He had intense regret and a sense of loss over his childhood and the limited life he had been able to live as a boy and young man. He describes feeling very hopeful about immigrating, but found himself very unprepared and he struggled with the need to prove himself to his family in Lebanon, with the need to make up for his deprivation as a child, and with the difficulty of life in this country.

During this period he began to gamble, hoping that he could win a large amount of money and thus make up for his many losses in life. In his early life he had witnessed the capricious nature of fate, and his gambling was linked to his belief that important issues in life are ruled by chance, and that his time must come. This belief also drove him to seek credit. He wanted to be able to gamble, in the intense belief that he could soon win, and he wanted to be able to show his family, with gifts, and with travel, that he was making a success. He soon was overwhelmed with debt and was forced to face failure. Mohamed entered therapy soon after this.

Therapy: Mohamed sought help after a referral by his then primary care physician, Ann Spires, M.D. He had begun antidepressant and anxiolytic medication that she prescribed, but was deeply depressed and having panic attacks. He also had recurrent nightmares with images of destruction by nuclear explosion and flooding, and was struggling with intense fear at night. He would awake but be unable to move, and feel intense panic. In therapy, over the next five months, Mohamed began to articulate his memories and to work through the intense affect stored since his early childhood. This working through process, along with the medication, helped him to gain some measure of calm. He began a process of bankruptcy, and was beginning to deal with the mess he had made. He felt intense shame at this point, but was increasingly determined to do what he needed to do in order to correct his mistakes. He also had stopped gambling.

Mohamed was offered a job in Ludlow, MA, working with his brother. He could make more money, which he needed to do, as he had a payment plan through the bankruptcy court. He feared relapsing in his gambling, as the job was at a filling station and convenience store that sold lottery tickets, but eventually decided to go. At this point, sessions stopped for a period, as the trip was too long.

Mohamed began to attend therapy on a more regular basis, despite, the travel and time required, in August of 2004. He had become more depressed and pressures from his family in Lebanon had increased, as his mother was very ill and his father was also not in good health. He had not continued his medication, having no source in Ludlow. (Mohamed has not had any insurance coverage for his treatment, and has paid of his sessions and his medication).

Since he retuned, he has commuted on a biweekly basis, and has resumed working very well on his depression and anxiety. His medication, an antidepressant, is now prescribed by Dr Campos, at the Greater Lawrence Family Health Center. He has had to deal with his legal problems, but has said that he is determined to do what he must, that he wishes to get through this period if he can, so that he can resume his life.

Prognosis: Mohamed has made very significant progress in the past two years. He has begun talking about plans for the future, would like to be able to study and work, and is committed to finishing his payment plan to the court and working to achieve a better life for himself. His depression and anxiety are still present, but in much better control, and he is significantly stronger and more mature. If he has the opportunity to do so, he is likely to be able to do very well.

# EXHIBIT B

JABAK, MOHAMED N
6 OAK MEADOW
METHUEN, MA 01844

SSN 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

**PERIOD COVERED THIS REPORT:** 04-22-2005 TO 09-30-2005

**TRUSTEE:** Denise M. Pappalardo

DATE FILED: 01/21/03
LATEST 341: 08/15/03
ORIGINAL 341:
CONFIRMED: 07/30/03

UNSECURED PAID AT: 10.0000%
BASE AMOUNT: $16,195.00
PLAN UNSECURED: NONE
MONTHLY BASE: NONE

CASE #: 0340350
PRINTED #: 03-03-0350-JBR

COMP %: 5.00    EXP %: 5.00
MIN BALANCE: 10.00
DELINQUENT: 0

### PLAN PAYMENTS

| Period | Tran Date | Source | Funds In | Funds Out |
|--------|-----------|--------|----------|-----------|

WAIT 395.00 MONTHLY

### PLAN RECEIPTS

| Period | Tran Date | Source | Funds In | Trans Type |
|--------|-----------|--------|----------|------------|
| 05 04 | 03/30/05 | MO 43919 | 395.00 | Receipt |
| 05 05 | 05/03/05 | MO 44118 | 395.00 | Receipt |
| 05 06 | 06/07/05 | MO 09752 | 395.00 | Receipt |
| 05 07 | 07/01/05 | MO 49237 | 395.00 | Receipt |
| 05 08 | 08/11/05 | MO 49237 | 395.00 | Receipt |
| 05 09 | 09/01/05 | MO 44528 | 395.00 | Receipt |

### CREDITORS

| CLAIM REF | CLASS | CREDITORS NAME | PAY METHOD | FIXED PAYMENT | CLAIMED (PAY %) | PRIN PAID / INT PAID | PRIN DUE / INT DUE |
|-----------|-------|----------------|------------|---------------|------------------|-----------------------|---------------------|
| 001 | 5 | AMERICAN EXPRESS TRAVE | 33 PR | | 37,184.24 | 2,476.72 | 1,241.70 |
| 002 | 5 | AMERICAN EXPRESS CENTU | 33 PR | | 1,520.11 | 101.25 | 50.76 |
| 003 | 6 | ARROW FINANCIAL SERVIC | 33 PR | | 7,321.75 | 487.68 | 244.50 |
| 004 | 7 | ECAST SETTLEMENT CORP. FKA CHASE MANHATTAN | 33 PR | | 8,402.72 | 559.68 | 280.59 |
| 005 | 8 | ECAST SETTLEMENT CORP. | 33 PR | | 1,402.71 | 93.30 | 46.77 |
| 006 | 9 | SEARS | 13 PR | | 0.00 | 0.00 | 0.00 |
| 007 | 9 | STEPHEN W. WIGHT, ESQ. PRIOR COUNSEL | 13 PR | | | | |
| 007 | 4 | LONGS JEWELERS, LTD | 24 FX | 119.17 07/2003 | 4,885.94 | 3,217.59 | 1,668.35 |
| 008 | 11 | CAPITAL ONE FINANCIAL | 33 PR | | 1,810.29 | 120.58 | 60.45 |
| 009 | 12 | CARD SERVICE CENTER | 33 PR | | 1,460.18 | 97.26 | 48.76 |
| 010 | 13 | MANUFACTURER & TRADERS | 33 PR | | 8,633.15 | 575.03 | 288.29 |
| 011 | 14 | LORD & TAYLOR | 33 PR | | 1,021.10 | 67.99 | 34.12 |
| 012 | 15 | SHERMAN ACQUISITION LP | 33 PR | | 5,735.66 | 382.04 | 191.53 |
| 013 | 16 | DISCOVER | 33 PR | | 988.83 | 65.86 | 33.02 |
| 013 | 16 | SHERMAN ACQUISITION LP | 33 PR | | | | |
| 014 | 17 | household/orchard ban | 33 PR | | 4,964.31 | 330.66 | 165.77 |
| | 18 | ATLANTIC CREDIT AND FI | 33 PR | | | | |

### CREDITOR DISBURSEMENTS

| MO CHECK # | AMOUNT | MO CHECK # | AMOUNT | MO CHECK # | AMOUNT |
|------------|--------|------------|--------|------------|--------|
| 0504 423280 | 135.81 | 0505 424742 | 135.82 | 0506 426370 | 135.82 |
| 0507 427837 | 135.82 | 0508 429289 | 135.82 | 0509 430927 | 773.23 |
| 0505 424705 | 11.10 | 0507 427802 | 11.11 | 0509 430890 | 37.10 |
| 0504 424557 | 26.74 | 0505 426183 | 26.75 | 0506 427655 | 26.75 |
| 0507 429109 | 26.74 | 0508 430725 | 26.75 | 0509 432435 | 152.89 |
| 0504 424557 | 30.69 | 0505 426218 | 30.69 | 0506 427655 | 174.74 |
| 0507 429138 | 30.69 | 0508 430757 | 30.69 | 0509 432468 | 34.25 |
| 0505 426218 | 10.23 | 0507 429138 | 10.23 | 0509 432468 | |
| 0509 431818 | 3,217.59 | | | 0506 426370 | 44.12 |
| 0505 426189 | 13.23 | 0507 429113 | 13.22 | 0509 432442 | |
| 0505 424929 | 10.67 | 0507 428000 | 10.67 | 0509 431102 | 35.39 |
| 0504 424071 | 31.53 | 0505 425622 | 31.53 | 0506 427145 | 31.53 |
| 0507 428606 | 31.53 | 0508 430168 | 31.53 | 0509 431830 | 179.14 |
| 0505 424244 | 11.19 | 0508 430789 | 11.19 | 0509 432500 | 21.15 |
| 0504 424638 | 20.95 | 0505 426275 | 20.95 | 0506 427736 | 20.95 |
| 0507 429184 | 20.95 | 0508 430816 | 20.95 | 0509 432524 | 119.14 |
| 0505 426275 | 10.84 | 0508 430816 | | 0509 432524 | 10.84 |
| 0504 423332 | 18.13 | 0505 424801 | 18.14 | 0506 426416 | 18.13 |
| 0507 427887 | | 0508 429341 | 18.13 | 0509 430982 | 103.74 |

PAGE 1

JABAR, MOHAMED N
6 OAK MEADOW
METHUEN, MA 01844

SSN 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

PLAN 07-01-2003 TO          MAIL SSB          395.00 MONTHLY

| Period | Tran Date | Source | Funds In | Funds Out |
|---|---|---|---|---|
| 04 11 | 10/29/04 | MO 71271 | 395.00 | |
| 04 11 | 11/29/04 | MO 71426 | 395.00 | |
| 05 01 | 12/29/04 | MO 23337 | 395.00 | |
| 05 01 | 01/31/05 | MO 60971 | 395.00 | |
| 05 01 | 03/03/05 | MO 23746 | 395.00 | |

PERIOD COVERED THIS REPORT 10-22-2004 TO 03-25-2005
TRUSTEE 3C
Denise M. Pappalardo

DATE FILED:
LATEST 341: 01/21/03 UNSECURED PAID AT 10.0001%
BASE AMOUNT $16,195.00
ORIGINAL 341: 08/15/03 PLAN UNSECURED NONE
CONFIRMED: 07/30/03 MONTHLY BASE NONE

CASE #: 03U030
PRINTED #:03-40350-JBR

COMP % 5.00    MIN BALANCE 10.00
EXP % 5.00    DELINQUENT -30.00

| CLAIM REF | CLASS | CREDITORS NAME | ACCRUING INT RATE (%) | PAY SEQ METHOD | FIXED PAYMENT | INTEREST | CLAIMED (PAY %) | PRIN PAID INT PAID | PRIN DUE INT DUE | CREDITOR DISBURSEMENTS: MO CHECK # AMOUNT | | | MO CHECK # AMOUNT | MO CHECK # AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 001 | 3 | AMERICAN EXPRESS TRAVE | | 33 PR | | | 37,184.24 | 1,024.40 | 2,694.02 | 0412 417391 140.54 | 0503 418769 135.82 | 0502 420275 135.82 | | |
| 5 | | | | | | | | | | 0503 421701 135.82 | 0503 421754 11.11 | 0502 420311 11.11 | | |
| 002 | 3 | AMERICAN EXPRESS CENTU | | 33 PR | | | 1,520.11 | 41.88 | 110.13 | 0501 418745 11.29 | | | | |
| 6 | | | | | | | | | | 0412 417444 27.67 | 0501 418809 26.74 | 0502 420311 26.74 | | |
| 003 | 3 | ARROW FINANCIAL SERVIC | | 33 PR | | | 7,321.75 | 201.71 | 530.47 | 0503 421818 26.74 | 0501 419209 30.70 | 0502 420693 30.70 | | |
| 7 | | | | | | | | | | 0412 417759 31.75 | | | | |
| 004 | 3 | ECAST SETTLEMENT CORP. | | 33 PR | | | 8,402.72 | 231.49 | 608.78 | 0503 421818 30.69 | 0503 422210 10.23 | | | |
| 8 | FKA CHASE MANHATTAN | | | | | | | | | 0501 419209 10.41 | | | | |
| 005 | 8 | ECAST SETTLEMENT CORP. | | 33 PR | | | 1,400.71 | 38.59 | 101.48 | 0503 422210 | | | | |
| | SEARS | | | | | | | | | | | | | |
| 006 | 9 | STEPHEN W. WIGHT, ESQ. | | 13 PR | | | 0.00 | 0.00 | 0.00 | 0.00 | | | | |
| | | PRIOR COUNSEL, | | | | | | | | | | | | |
| 007 | 3 | LONGS JEWELERS, LTD | | 24 PR | | | 4,885.94 | 0.00 | 4,885.94 | | | | | |
| 008 | 3 | CAPITAL ONE FINANCIAL | | 33 PR | | | 1,810.29 | 49.87 | 131.16 | 0501 418923 13.45 | 0503 421929 13.22 | 0503 421116 13.22 | | |
| | | | | | | | | | | 0503 421933 10.67 | | | | |
| 009 | 3 | CARD SERVICE CENTER | | 33 PR | | | 1,460.18 | 40.23 | 105.79 | 0501 418928 10.85 | 0501 419628 31.52 | 0502 421116 31.52 | | |
| 010 | 3 | MANUFACTURER & TRADERS | | 33 PR | | | 8,633.15 | 237.84 | 625.48 | 0412 418144 32.62 | | | | |
| | | | | | | | | | | 0503 422646 31.53 | | | | |
| 011 | 3 | LORD & TAYLOR | | 33 PR | | | 1,021.10 | 24.40 | 77.71 | 0503 421103 11.32 | | | | |
| 012 | 3 | SHERMAN ACQUISITION LP | | 33 PR | | | 5,735.66 | 158.01 | 415.56 | 0412 418469 21.67 | 0501 419955 20.95 | 0502 421463 20.95 | | |
| | DISCOVER | | | | | | | | | 0503 422980 20.95 | | | | |
| 013 | 3 | SHERMAN ACQUISITION LP | | 33 PR | | | 988.83 | 23.63 | 75.25 | 0502 421463 10.96 | | | | |
| | household/orchard ban | | | | | | | | | | | | | |
| 014 | 3 | ATLANTIC CREDIT AND FI | | 33 PR | | | 4,964.31 | 136.76 | 359.67 | 0412 417457 18.75 | 0501 418824 18.14 | 0502 420325 18.14 | | |
| | | | | | | | | | | 0503 421033 18.13 | | | | |

SUMMARY TO DATE
RECEIPTS TO DATE
SECURED (CLASS 1)
PRIORITY (CLASS 2 & 4)
UNSECURED (CLASS 3,5,6,7,8)
REFUNDS RECEIPTS
FILING FEES
ADMINISTRATIVE (CLASS A)
CLERK'S FEES
ATTORNEY (CLASS 9)
OTHER COSTS
TRUSTEE COMP
TRUSTEE EXP
EST. INT. DUE ALL CLASSES
DEBTOR ATTY
EST. TRUSTEE COMP
EST. UNPAID TRUSTEE COMP
EST. UNPAID TRUSTEE EXP
CREDITORS PRINCIPAL
CREDITORS INTEREST
REFUND CLOSING
NEEDED TO COMPLETE BASE
BALANCE ON HAND
TAX REFUND
UNALLOCATED FUNDS
NEEDED TO COMPLETE CLAIMS
FUNDS ON HAND
EST PAYOFF LEFT

PAGE 1

JABAR, MOHAMMED N
6 OAK MEADOW
METHUEN, MA 01844
SSN 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

MAIL $$$

| CASE #: 040350 | PRINTED #: 03-40350-JBR |
|---|---|
| UNSECURED PAID AT 10.0000% | BASE AMOUNT 916,195.00 |
| PLAN UNSECURED: NONE | |
| MONTHLY BASE: NONE | |

| DATE FILED: | 01/21/03 |
|---|---|
| LATEST 341: | 08/15/03 |
| ORIGINAL 341: | 08/15/03 |
| CONFIRMED: | 07/30/03 |

| COMP % | 1.60 | MIN BALANCE 10.00 |
|---|---|---|
| EXP % | 1.60 | DELINQUENT 0 -42000 |

**PERIOD COVERED THIS REPORT** 04-23-2004 TO 09-30-2004
TRUSTEE Denise M. Pappalardo 3C

07-01-2003 TO    395.00 MONTHLY

| Period | Trans Date | Source | Funds In | Trans Type |
|---|---|---|---|---|
| 04 05 | 04/28/0640 | 15788 | 395.00 | Receipt |
| 04 06 | 05/27/0640 | 85520 | 400.00 | Receipt |
| 04 06 | 06/29/0640 | 56615 | 395.00 | Receipt |
| 04 06 | 07/29/0640 | 56634 | 395.00 | Receipt |
| 04 06 | 08/30/0640 | 25562 | 395.00 | Receipt |
| 04 06 | 09/28/0640 | 71110 | 395.00 | Receipt |

| CLAIM REF | CLASS | CREDITORS NAME | ACCRUING INT RATE/AMT | FILING METHOD | CLAIMED (PAY %) | PRIN PAID INT PAID | PRIN DUE INT DUE | MO CHECK# | AMOUNT | MO CHECK# | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 001 | 3 | AMERICAN EXPRESS TRAVE | 33 | PR | 37,184.24 | 476.40 | 3,242.02 | 0408 411487 | 41.67 | 0409 412997 | 434.73 |
| 002 | 3 | AMERICAN EXPRESS CENTU | 33 | PR | 1,520.11 | 19.48 | 132.53 | 0409 412983 | 19.48 | | |
| 003 | 3 | ARROW FINANCIAL SERVIC | 33 | PR | 7,321.75 | 93.81 | 638.37 | 0409 413053 | 93.81 | | |
| 004 | 8 | FCOAST SETTLEMENT CORP. | 33 | PR | 8,402.72 | 107.66 | 732.61 | 0409 413472 | 107.66 | | |
| 005 | 8 | FCOAST SETTLEMENT CORP. | 33 | PR | 1,400.71 | 17.95 | 122.12 | 0409 413472 | 17.95 | | |
| 006 | 9 | SEARS | 13 | PR | 0.00 | 0.00 | 0.00 | | | | |
| 007 | 9 | STEPHEN W. WIGHT, ESQ. PRIOR COUNSEL | | PR | | | | | | | |
| | 11 | LONGS JEWELERS, LTD | 24 | PR | 4,885.94 | 0.00 | 4,885.94 | | | | |
| 008 | 3 | CAPITAL ONE FINANCIAL | 33 | PR | 1,810.29 | 23.20 | 157.83 | 0409 413184 | 23.20 | | |
| 009 | 3 | CARD SERVICE CENTER | 33 | PR | 1,460.18 | 18.71 | 127.31 | 0409 413189 | 18.71 | | |
| 010 | 3 | MANUFACTURER & TRADERS | 33 | PR | 8,633.15 | 110.62 | 752.70 | 0409 413895 | 110.62 | | |
| 011 | 3 | LORD & TAYLOR | 33 | PR | 1,021.10 | 13.08 | 89.03 | 0409 413887 | 13.08 | | |
| 012 | 3 | SHERMAN ACQUISITION LP DISCOVER | 33 | PR | 5,735.66 | 73.49 | 500.08 | 0409 414246 | 73.49 | | |
| 013 | 3 | SHERMAN ACQUISITION LP household/orchard ban | 33 | PR | 988.83 | 12.67 | 86.21 | 0409 414246 | 12.67 | | |
| 014 | 3 | ATLANTIC CREDIT AND FI | 33 | PR | 4,964.31 | 63.61 | 432.82 | 0409 413067 | 63.61 | | |

PAGE 1

UASAR, RIHANNED N
6 OAK MEADOW
METHUEN, MA 01844

SS# 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     MAIL SS#

| CASE #: 0340350 | PRINTED #:03-40350-JBR |
| COMP % 5.00 | MIN BALANCE 9,999,999. |
| EXP % 5.00 | DELINQUENT -800 |

PERIOD COVERED THIS REPORT
04-25-2003 TO 09-30-2003

TRUSTEE
Denise M. Pappalardo

DATE FILED: 01/21/03  UNSECURED PAID AT 0.0000%
LATEST 341: 08/15/03  BASE AMOUNT $16,400.00
ORIGINAL 341: 08/15/03  PLAN UNSECURED NONE
CONFIRMED: NONE  MONTHLY BASE NONE

08-01-2003 TO     400.00 MONTHLY

**PLAN PAYMENTS**

| Period | Tran Date | Source | Funds In | Funds Out | Trans Type |
|---|---|---|---|---|---|
| 03 0 | 06/26/03 | MO 90880 | 400.00 | | Receipt |
| 03 0 | 07/22/03 | MO 61196 | 400.00 | | Receipt |
| 03 0 | 08/25/03 | MO 72876 | 400.00 | | Receipt |
| 03 0 | 09/23/03 | MO 29000 | 400.00 | | Receipt |

**PLAN RECEIPTS**

| Period | Trans Date | Source | Funds In | Funds Out | Trans Type |
|---|---|---|---|---|---|

CREDITOR DISBURSEMENTS: P/Prewrite, C/Cancel, R/Return, I/Xfr In, O/Out, */Last
MO CHECK # AMOUNT   MO CHECK # AMOUNT   MO CHECK # AMOUNT

| CLAIM REF | CLASS | CREDITORS NAME | ACCRUED INT/PERIT LIMIT (%) | METHOD PAY SEC/U | FILING FEES | ADMINISTRATIVE (CLASS A) | CLERK'S FEES | FIXED PAYMENT | INTEREST | ATTORNEY (CLASS 3) | OTHER COSTS | TRUSTEE COMP | TRUSTEE EXP | PRIN PAID INT PAID | PRIN DUE INT DUE | CLAIMED (PAY %) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 001 | 5 3 | AMERICAN EXPRESS TRAVE | 33 | PR | | | | | | | | | | 0.00 | 0.00 | 37,184.24 |
| | Ac | | | | | | | | | | | | | | | |
| 002 | 6 3 | AMERICAN EXPRESS CENTU | 33 | PR | | | | | | | | | | 0.00 | 0.00 | 1,520.11 |
| | Ac | | | | | | | | | | | | | | | |
| 003 | 3 | ARROW FINANCIAL SERVIC | 33 | PR | | | | | | | | | | 0.00 | 0.00 | 7,321.75 |
| | 7 Ac | | | | | | | | | | | | | | | |
| 004 | 3 | CHASE MANHATTAN BANK U | 33 | PR | | | | | | | | | | 0.00 | 0.00 | 8,402.72 |
| | 8 Ac | | | | | | | | | | | | | | | |
| 005 | 9 Ac | SEARS, ROEBUCK & CO. | 33 | PR | | | | | | | | | | 0.00 | 0.00 | 1,400.71 |
| 006 | 9 4 | STEPHEN W. WIGHT, ESQ. PRIOR COUNSEL | 13 | PR | | | | | | | | | | 0.00 | 0.00 | 0.00 |
| 777 | 1 8 IC | DEBTOR | 96 | PR | | | | | | | | | | Continuing | Continuing | Continuing |
| 799 | 9 IC | JEFFREY A. KITAEFF, ES SUCCESSOR COUNSEL | 13 | PR | | | | | | | | | | 0.00 | 0.00 | 0.00 |
| 881 | 11 2 | DENISE M. PAPPALARDO | 11 | PR | | | | | | | | | | 0.00 | 0.00 | 0.00 |
| F1 | 7 3 | DENISE M. PAPPALARDO | 11 | PR | | | | | | | | | | 0.00 | 0.00 | 0.00 |

| SUMMARY TO DATE | # PAID | SECURED (CLASS 1) | PRIORITY (CLASS 2 & 4) | UNSECURED (CLASS 3,6,7,9) | REFUND RECEIPTS | PRIN PAID OUT | RECEIPTS TO DATE | FILING FEES | CLERK'S FEES | ADMINISTRATIVE | ATTORNEY (CLASS A) | OTHER COSTS | TRUSTEE COMP | TRUSTEE EXP | EST. INT DUE ALL CLASSES | EST. UNPAID TRUSTEE COMP | DEBTOR ATTY | CREDITORS PRINCIPAL | CREDITORS INTEREST | REFUND CLOSING | UNALLOCATED FUNDS | BAL-ANCE | FUNDS ON HAND |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 0.00 | 0.00 | 0.00 | 0.00 | | 1,600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,600.00 | | 1,600.00 |
| BALANCES STILL DUE | | | | | | | | | EST. UNPAID TRUSTEE EXP | | | | | | | | | NEEDED TO COMPLETE BASE 14,800.00 | | NEEDED TO COMPLETE CLAIMS -1,600.00 | | EST PAYOFF LEFT 0 | 0 |

CHAVAS, MOHAMMED M
6 OAK MEADOW
METHUEN, MA 01844

SS# 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

COMP % 5.00     MIN BALANCE
EXP % 5.00      DELINQUENT

CASE #: 0340350
PRINTED #: 03-40350-JBR

UNSECURED PAID AT      10.0000%
BASE AMOUNT           $16,195.00
PLAN UNSECURED        NONE
MONTHLY BASE          NONE

DATE FILED:        01/21/03
LATEST 341:        08/15/03
ORIGINAL 341:      08/15/03
CONFIRMED:         07/30/03

PERIOD COVERED THIS REPORT
10-24-2003 TO 03-26-2004

TRUSTEE
Denise M. Pappalardo

07-01-2003 TO                395.00 MONTHLY        MAXI $$$

| Period | Tran Date | Source | Funds In |
|---|---|---|---|
| 03 11 | 10/28/03 | NO 31578 | 395.00 |
| 03 12 | 12/02/03 | NO 42140 | 400.00 |
| 03 12 | 12/29/03 | NO 21504 | 395.00 |
| 04 01 | 01/26/04 | NO 07344 | 395.00 |
| 04 02 | 02/27/04 | NO 97704 | 395.00 |
| 04 03 | 03/24/04 | NO 15511 | 395.00 |

CREDITOR DISBURSEMENTS: P=Prorata, C=Cancel, R=Return, V=Vlr In, D=Out, *=Last

| CLAIM REF | SEQ | CREDITORS NAME | ACCRUED INT (T3*) | UNSECURED (CLASS 3,4,7,8) | REFUND RECEIPTS | FUND FEES | ADMINISTRATIVE (CLASS A) | FIXED PAYMENT | INTEREST | CLAIMED (PAY %) | PRIN PAID INT PAID | PRIN DUE INT DUE | Period | Tran Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 001 | 3 | AMERICAN EXPRESS TRAVE | | | | 33 PR | | | | 37,184.24 | 0.00 | 3,718.42 | | |
| 002 | 5 | AMERICAN EXPRESS CENTU | | | | 33 PR | | | | 1,520.11 | 0.00 | 152.01 | | |
| 003 | 3 | ARROW FINANCIAL SERVIC | | | | 33 PR | | | | 7,321.75 | 0.00 | 732.18 | | |
| 004 | 7 | EGAST SETTLEMENT CORP. | | | | 33 PR | | | | 8,402.72 | 0.00 | 840.27 | | |
| | 8 | DATA CASH MANAGEM | | | | 33 PR | | | | | | | | |
| 005 | 3 | EGAST SETTLEMENT CORP. | | | | 33 PR | | | | 1,400.71 | 0.00 | 140.07 | | |
| 006 | 9 | STEPHEN W. WIGHT, ESQ. | | | | 13 PR | | | | 0.00 | 0.00 | 0.00 | | |
| | 9 | PRIOR COUNSEL | | | | | | | | | | | | |
| 007 | 11 | LLOYDS JEWELERS, LTD | | | | 24 PR | | | | 4,885.94 | 0.00 | 4,885.94 | | |
| 008 | 12 | CAPITAL ONE FINANCIAL | | | | 33 PR | | | | 1,810.29 | 0.00 | 181.03 | | |
| 777 | 1 | DEBTOR | | | | 96 PR | | | | Continuing | 0.00 | Continuing | | |
| 799 | 10 | JEFFREY A. KITAEFF, ES | | | | 13 PR | | | | 0.00 | 0.00 | 0.00 | | |
| | 10 | SUCCESSOR COUNSEL | | | | | | | | | | | | |
| 881 | 7 | DENISE M. PAPPALARDO | | | | 11 PR | | | | 0.00 | 0.00 | 0.00 | | |
| FT | 2 | DENISE M. PAPPALARDO | | | | 11 PR | | | | 0.00 | 0.00 | 0.00 | | |
| | 3 | | | | | | | | | | | | | |

| RECEIPTS TO DATE | SECURED (CLASS 1) | PRIORITY (CLASS 2 & 6) | REFUND RECEIPTS | UNSECURED (CLASS 3,4,7,8) | ATTORNEY (CLASS 5) | OTHER COSTS | TRUSTEE COMP | TRUSTEE EXP | EXT. INT. DUE ALL CLASSES | EST. UNPAID TRUSTEE COMP | EXT. UNPAID TRUSTEE EXP | CREDITOR PRINCIPAL | CREDITOR INTEREST | UNALLOCATED FUNDS | FUNDS ON HAND |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3,975.00 | 4,885.94 | 0.00 | 0.00 | 5,763.98 | | | Continuing | | | 591.67 | 591.64 | | | 3,975.00 | 3,975.00 |

| | NEEDED TO COMPLETE BASE | NEEDED TO COMPLETE CLAIMS | EBT PAYOFF LEFT |
|---|---|---|---|
| | 12,220.00 | 7,859.23 | 20 |

JABAR, MOHAMED N
6 OAK MEADOW
METHUEN, MA 01844

SSN 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

**PERIOD COVERED THIS REPORT** 10-22-2004 TO 03-25-2005

**DATE FILED:**
LATEST 341:
ORIGINAL 341:
CONFIRMED:

01/21/03
08/15/03
08/15/03
07/30/03

TRUSTEE 3C
Denise M. Pappalardo

UNSECURED PAID AT
BASE AMOUNT          $16,195.00
PLAN UNSECURED       NONE
MONTHLY BASE         NONE

PRINTED #:03-40350-JBR

| CLAIM REF | CREDITORS NAME | CLASS | PAY SEQ METHOD UNIT (PR) | FILING FEES | CLAIMED (PAY %) | PRIN PAID INT PAID | PRIN DUE INT DUE | CREDITOR DISBURSEMENTS: MO CHECK # AMOUNT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 015 19 | 3 B-LINE, LLC | | 33 PR | | 2,216.32 | 61.06 | 160.57 | 0501 418841 | 16.47 | 0503 421851 | 16.19 |
| 016 20 | 3 B-LINE, LLC | | 33 PR | | 2,623.98 | 72.29 | 190.11 | 0501 418841 | 19.50 | 0503 421851 | 19.17 |
| 017 21 | 3 B-LINE, LLC | | 33 PR | | 12,041.20 | 331.73 | 872.39 | 0412 417470 | 45.50 | 0501 418841 | 43.98 |
| 777 1 | 8 DEBTOR | | 96 PR | | Continuing | 0.00 | Continuing | 0503 421851 | 43.98 | 0502 420345 | 43.98 |
| 799 9 | JEFFREY A. KITAEFF, ES SUCCESSOR COUNSEL | 13 PR | | | 0.00 | 0.00 | 0.00 | | | | |
| 881 2 | 7 DENISE M. PAPPALARDO | | 11 PR | | 0.00 | 0.00 | 0.00 | | | | |
| F1 3 | 7 DENISE M. PAPPALARDO | | 11 PR | | 0.00 | 0.00 | 0.00 | | | | |

| | SECURED (CLASS 1) | PRIORITY (CLASS 1) | UNSECURED (CLASS 2 & 4) | REFUND RECEIPTS | UNSECURED (CLASS 3,5,6,7,8) | ADMINISTRATIVE (CLASS A) | CLIENTS FEES | OTHER (CLASS B) | ATTORNEY (CLASS B) | TRUSTEE COMP | EST. INT. DUE ALL CLASSES | TRUSTEE EXP | EST. UNPAID TRUSTEE COMP | DEBTOR | EST. UNPAID TRUSTEE EXP | CREDITORS PRINCIPAL | CREDITORS INTEREST | EST. UNPAID TRUSTEE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

SUMMARY TO DATE
RECEIPTS TO DATE 8,325.00

| SECURED (CLASS 1) 4,885.94 | PRIORITY (CLASS 1) 0.00 | UNSECURED (CLASS 2 & 4) 0.00 | REFUND RECEIPTS 0.00 | UNSECURED 7,058.57 | FILING FEES 0.00 | | | | ATTORNEY 0.00 | TRUSTEE COMP 102.08 | | TRUSTEE EXP 102.08 | DEBTOR 0.00 | | CREDITORS PRINCIPAL 2,673.89 | CREDITORS INTEREST 0.00 | |

BALANCES STILL DUE

| | EST. INT DUE 0.00 | REFUND CLOSING 0.00 | NEEDED TO COMPLETE BASE 7,870.00 | NEEDED TO COMPLETE CLAIMS 7,824.71 | EST. UNPAID TRUSTEE COMP 663.60 | EST. UNPAID TRUSTEE EXP 663.55 |

UNALLOCATED FUNDS 5,446.95
BALANCE 5,446.95

FUNDS ON HAND 5,446.95

EST PAYOFF LEFT 20

JABAR, MOHAMED N
6 OAK MEADOW
METHUEN, MA 01844

SS# 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

NAIL SS#

PERIOD COVERED THIS REPORT
04-23-2004 TO 09-30-2004

TRUSTEE          3C
Denise M. Pappalardo

DATE FILED:
LATEST 341:
ORIGINAL 341:
CONFIRMED:

UNSECURED PAID AT         10.0000%
BASE AMOUNT          $16,195.00
PLAN UNSECURED
MONTHLY BASE

01/21/03
08/15/03
08/15/03
07/30/03

CASE #: 0340350
PRINTED #:03-40350-JBR

NONE
NONE

COMP %   MIN BALANCE

EXP %   DELINQUENT

| CLAIM REF | CLASS | CREDITORS NAME | ACCTG. PAY METHOD | CLAIMED (PAY %) | PRIN PAID INT PAID | PRIN DUE INT DUE | CREDITOR DISBURSEMENTS: | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | MO CHECK # | AMOUNT | MO CHECK # | AMOUNT | |
| 015 19 | 3 | B-LINE, LLC | 33 PR | 2,216.32 | 28.40 | 193.23 | 0409 413091 | 28.40 | | | |
| 016 20 | 3 | B-LINE, LLC | 33 PR | 2,623.98 | 33.62 | 228.78 | 0409 413091 | 33.62 | | | |
| 017 21 | 3 | B-LINE, LLC | 33 PR | 12,041.20 | 154.28 | 1,049.84 | 0408 411574 | 13.49 | 0409 413091 | 140.79 | |
| 777 | 8 | DEBTOR | 96 PR | Continuing | 0.00 | Continuing | | | | | |
| 799 1 | 9 | JEFFREY A. KITAEFF, ES SUCCESSOR COUNSEL | 13 PR | 0.00 | 0.00 | 0.00 | | | | | |
| 881 2 | 7 | DENISE M. PAPPALARDO | 11 PR | 0.00 | 0.00 | 0.00 | | | | | |
| F1 3 | 7 | DENISE M. PAPPALARDO | 11 PR | 0.00 | 0.00 | 0.00 | | | | | |

| SUMMARY TO DATE | RECEIPTS TO DATE 6,350.00 | RECEIPTS | PRIORITY (CLASS 2 & 4) 0.00 | UNSECURED (CLASS 3,6,7,8) 8,485.48 | ADMINISTRATIVE (CLASS A) | CLASS'S FEES 0.00 | ATTORNEY (CLASS 9) 0.00 | OTHER COSTS 0.00 | TRUSTEE COMP% 0.00 | TRUSTEE EXP 22.78 | DEBTOR 221.05 | CREDITORS PAID 1,246.98 | CREDITORS INTEREST 220.98 | REFUND CLOSING | UNALLOCATED FUNDS 5,057.46 | FUNDS ON HAND 5,057.46 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BALANCES STILL DUE | SECURED (CLASS 1) 4,885.94 | | 0.00 | | | | EST. INT. DUE ALL CLASSES 0.00 | | EST. INT. DUE ALL CLASSES | EST. UNPAID TRUSTEE EXP | EST. UNPAID TRUSTEE COMP 221.05 | EST. UNPAID TRUSTEE EXP 1,246.98 | NEEDED TO COMPLETE BASE 9,845.00 | NEEDED TO COMPLETE CLAIMS 8,755.99 | BALANCE 5,057.46 | EST PAYOFF LEFT 23 |

CREDITOR DISBURSEMENTS: P=Prewrite, C=Cancel, R=Return, I/Xfr In, O=Out, *=Last

JABAR, MOHAMED N
6 OAK MEADOW
METHUEN, MA 01844

SSN 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

TRUSTEE: Denise M. Pappalardo    3C

PERIOD COVERED THIS REPORT
04-22-2005  TO  09-30-2005

DATE FILED:                01/21/03  UNSECURED PAID AT         10.0000%  CASE #: 0340350
LATEST 341:                08/15/03  BASE AMOUNT              $16,195.00  PRINTED #:03-40350-JBR
ORIGINAL 341:              08/15/03  PLAN UNSECURED            NONE
CONFIRMED:                 07/30/03  MONTHLY BASE              NONE

| CRM REF | CLASS | CREDITORS NAME | ACCOUNT# PAY SEQ/METHOD | FIXED PAYMENT | INTEREST | CLAIMED (PAY %) | PRIN PAID INT PAID | PRIN DUE INT DUE | CREDITOR DISBURSEMENTS: P/Premture, C/Cancel, R/Return, U/Xfr In, O/Out, *Last | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | MO CHECK# AMOUNT | MO CHECK# AMOUNT | MO CHECK# AMOUNT | MO CHECK# AMOUNT | |
| 015 | 3 | B-LINE, LLC | 33 PR | | | 2,216.32 | 147.62 | 74.01 | 0505 426185  16.19 | 0507 429911  16.19 | 0509 432438  54.18 |
| 19 | | | | | | | | | | | |
| 3 | 3 | B-LINE, LLC | 33 PR | | | 2,623.98 | 174.78 | 87.62 | 0505 426185  19.17 | 0507 429911  19.17 | 0509 432438  64.15 |
| 20 | | | | | | | | | | | |
| 3 | 3 | B-LINE, LLC | 33 PR | | | 12,041.20 | 802.02 | 402.10 | 0504 424559  43.98 | 0505 426185  43.96 | 0506 427657  44.00 |
| 21 | | | | | | | | | | 0507 429911  43.98 | 0508 430727  43.98 | 0509 432438  250.39 |
| 97 | | | | | | Continuing | .00 | Continuing | | | |
| 1 | 8 | DEBTOR | 96 PR | | | | | | | | |
| 1 | 10 | JEFFREY A. KITAEFF, ES | 13 PR | | | 0.00 | 0.00 | 0.00 | | | |
| 99 | | | | | | | | | | | |
| 9 | 10 | SUCCESSOR COUNSEL | 11 PR | | | 0.00 | 0.00 | 0.00 | | | |
| 10 | 7 | DENISE M. PAPPALARDO | 11 PR | | | 0.00 | 0.00 | 0.00 | | | |
| F1 | 2 | DENISE M. PAPPALARDO | 11 PR | | | 0.00 | 0.00 | 0.00 | | | |
| 3 | 7 | | | | | | | | | | |

| SUMMARY TO DATE | RECEIPTS TO DATE | PAID OUT REFUND RECEIPTS | FILING FEES | CLERK'S FEES | OTHER FEES | TRUSTEE COMP ALL CLASSES | TRUSTEE EXP | DEBTOR ATTY | EST. UNPAID TRUSTEE COMP | EST. UNPAID TRUSTEE EXP | REFUND CLOSING | NEEDED TO COMPLETE BASE | FUNDS ON HAND |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PAID IN | 1,695.00 | 0.00 | 0.00 | 0.00 | 0.00 | 492.47 | 492.47 | 0.00 | 273.28 | 273.22 | 0.00 | 5,500.00 | 10.00 |

| BALANCES STILL DUE | SECURED (CLASS 1) | PRIORITY (CLASS 2 & 4) | UNSECURED (CLASS 3,5,6,7,8) | ADMINISTRATIVE (CLASS A) | ATTORNEY (CLASS B) | EST. INT. DUE ALL CLASSES | EST. INT. DUE CREDITORS PRINCIPAL | CREDITORS EXP | NEEDED TO COMPLETE CLAIMS | BALANCE NEEDED TO COMPLETE CLAIMS | UNALLOCATED FUNDS | EST PAYOFF LEFT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1,668.35 | 0.00 | 3,249.99 | 0.00 | 0.00 | 9,700.06 | 0.00 | 5,500.00 | 5,454.84 | 10.00 | 14 | |

COMP %    MIN BALANCE
EXP %        DELINQUENT

# Case Summary

|  |  |
|---|---|
| 01/26/2006 | |
| Payoff Projection for Case Number | 0340350 |
| Current Monthly Payment | 395.00 |
| Base Amount | 16,195.00 |
| Interest In Arrears | 0.00 |
| Interest Due Next Month | 0.00 |
| Trustee Fees Paid | 1,095.84 |
| Total Allowed Debt | 14,618.40 |
| Net Receipts | 12,275.00 |
| Total Disbursed | 11,840.56 |
| Total Interest Paid | 0.00 |
| Paid Direct | 0.00 |
| Total Withheld | 0.00 |
| Total Undisbursed | 434.44 |
| Available Funds | 434.44 |
| Refunded To Debtor | 0.00 |
| | |
| Payoff Per Base | 3,920.00 |
| Needed To Complete Claims | 3,850.59 |
| Delinquent | 0.00 |
| Estimated Months left to Payoff case over the life of the case | 10 |

The data displayed on this website is provided to EPIQ Systems, Inc. by trustee clients of EPIQ Systems, Inc. This website is not a replacement for PACER. It is the user's sole responsibility to verify data for accuracy.

Figures provided on this website should not be relied upon for use in court or court filings. EPIQ Systems, Inc. and its Chapter 13 Trustee clients assume no responsibility for the accuracy or completeness of data displayed on this website, including, but not limited to basic case, claim, disbursement or other information provided herein. Access to the provided information is controlled by the individual Chapter 13 Trustee

Receipts/Refunds For Debtor JABAK, MOHAMED - Case # 0340350

| Date | Period | Transaction Type | Source | Check/MO# | Receipt | Refund | Batch |
|------|--------|-----------------|--------|-----------|---------|--------|-------|
| 12/29/2005 | 2006 1 | Receipt | MO | 68149 | 395.00 | 0.00 | 00004885 |
| 11/29/2005 | 2005 12 | Receipt | MO | 26525 | 395.00 | 0.00 | 00004852 |
| 11/2/2005 | 2005 11 | Receipt | MO | 26239 | 395.00 | 0.00 | 00004828 |
| 10/3/2005 | 2005 10 | Receipt | MO | 26142 | 395.00 | 0.00 | 00004789 |
| 9/1/2005 | 2005 9 | Receipt | MO | 44528 | 395.00 | 0.00 | 00004744 |
| 8/11/2005 | 2005 8 | Receipt | MO | 49257 | 395.00 | 0.00 | 00004714 |
| 7/1/2005 | 2005 7 | Receipt | MO | 49237 | 395.00 | 0.00 | 00004669 |
| 6/7/2005 | 2005 6 | Receipt | MO | 09752 | 395.00 | 0.00 | 00004644 |
| 5/3/2005 | 2005 5 | Receipt | MO | 44118 | 395.00 | 0.00 | 00004601 |
| 3/30/2005 | 2005 4 | Receipt | MO | 43919 | 395.00 | 0.00 | 00004562 |
| 3/3/2005 | 2005 3 | Receipt | MO | 23746 | 395.00 | 0.00 | 00004531 |
| 1/31/2005 | 2005 2 | Receipt | MO | 60971 | 395.00 | 0.00 | 00004499 |
| 12/29/2004 | 2005 1 | Receipt | MO | 23337 | 395.00 | 0.00 | 00004460 |
| 11/29/2004 | 2004 12 | Receipt | MO | 71426 | 395.00 | 0.00 | 00004423 |
| 10/29/2004 | 2004 11 | Receipt | MO | 71271 | 395.00 | 0.00 | 00004387 |
| 9/28/2004 | 2004 9 | Receipt | MO | 71110 | 395.00 | 0.00 | 00004344 |
| 8/30/2004 | 2004 9 | Receipt | MO | 42562 | 395.00 | 0.00 | 00004314 |
| 7/29/2004 | 2004 8 | Receipt | MO | 56434 | 395.00 | 0.00 | 00004266 |
| 6/29/2004 | 2004 7 | Receipt | MO | 56415 | 395.00 | 0.00 | 00004232 |
| 5/27/2004 | 2004 5 | Receipt | MO | 85320 | 400.00 | 0.00 | 00004197 |
| 4/28/2004 | 2004 5 | Receipt | MO | 15788 | 395.00 | 0.00 | 00004166 |
| 3/24/2004 | 2004 3 | Receipt | MO | 15511 | 395.00 | 0.00 | 00004110 |
| 2/27/2004 | 2004 2 | Receipt | MO | 97704 | 395.00 | 0.00 | 00004076 |
| 1/26/2004 | 2004 2 | Receipt | MO | 07344 | 395.00 | 0.00 | 00004038 |
| 12/29/2003 | 2003 12 | Receipt | MO | 21504 | 395.00 | 0.00 | 00004005 |
| 12/2/2003 | 2003 12 | Receipt | MO | 42140 | 400.00 | 0.00 | 00003980 |
| 10/28/2003 | 2003 11 | Receipt | MO | 31578 | 395.00 | 0.00 | 00003941 |
| 9/23/2003 | 2003 9 | Receipt | MO | 29000 | 400.00 | 0.00 | 00003887 |
| 8/25/2003 | 2003 9 | Receipt | MO | 72876 | 400.00 | 0.00 | 00003850 |
| 7/22/2003 | 2003 7 | Receipt | MO | 61196 | 400.00 | 0.00 | 00003803 |
| 6/26/2003 | 2003 6 | Receipt | MO | 90880 | 400.00 | 0.00 | 00003774 |

|  | # Transactions | Amount |
|--|----------------|--------|
| Cost Receipts | 31 | 12,275.00 |
| NSF Backout | 0 | 0.00 |
| No Cost Receipts | 0 | 0.00 |
| NSF No Cost Backout | 0 | 0.00 |
| Refunds To Debtor | 0 | 0.00 |
| Transfers In | 0 | 0.00 |
| Transfers Out | 0 | 0.00 |
| Net Receipts | 31 | 12,275.00 |